UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 11-70453 MAG (LB) |
| Plaintiff, | ) ) | **AMENDED** |
| v. | ) ) | RELEASE ORDER |
| JAMES CALMAR ESVER, | ) ) | |
| Defendant. | ) ) | |

Following a wiretap resulting in intercepts, James Esver was charged by complaint with being a buyer of methamphetamine supplied by others dealing in pound quantities (by government proffer in other related cases, roughly a pound a week). Following two hearings, the last on April 28, 2011, and for the reasons stated on the record and in this order, the Court found that restrictive conditions would assure the defendant's appearance and the community's safety and ordered the defendant released. The conditions are set forth in the attached "Order Setting Conditions of Release and Bond Form," which is a standard one-page carbon-copy form that is used in the Northern District of California.

## I. RELEVANT LEGAL STANDARDS

Under the Bail Reform Act, 18 U.S.C. § 3142, a court must order the release of a defendant on a personal recognizance or unsecured appearance bond unless release on a bond alone will

RELEASE ORDER
CR 11-70453 MAG (LB)

not reasonably assure the defendant's appearance or the safety of the community or another person. *See* 18 U.S.C. § 3142(b). If a court determines that release on a bond alone presents a risk of nonappearance or a danger to any person or the community, then the court must choose "the least restrictive further condition[s]" that will assure the defendant's appearance and the safety of the community or another person. *See id.* § 3142(c) (listing thirteen possible conditions of release and empowering the court to impose "any other condition that is reasonably necessary" to assure the defendant's appearance and the community's safety).

In evaluating whether conditions can be fashioned under section 3142(c) to reasonably assure the defendant's appearance and the safety of the community or another person, a court "shall consider" the factors in section 3142(g), including (1) the nature and circumstances of the offense, including whether the offense is one of certain enumerated crimes (including a controlled substance offense), (2) the weight of the evidence, (3) the history and characteristics of the person (including his job, financial resources, family ties, community ties, substance abuse history, physical and mental condition, character, criminal history, past conduct, track record in appearing court, and whether at the time of arrest the person was on supervision for parole, probation, or other release in a pending criminal case), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. *Id.* § 3142(g).

Under section 3142(f), the court holds an actual bail hearing only in certain cases, including on the government's motion in drug cases (like the one here) involving a maximum sentence of at least ten years. *See id.* § 3142(f). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *See id.* § 3142(f). The court must order a defendant detained if – "after a hearing pursuant to the provisions of subsection [3142](f)" – the court finds that conditions cannot be fashioned to assure the defendant's appearance in court or the safety of the community or another person. *See id.* § 3142(e)(1). For a drug offense like this one with a maximum prison term of at least ten years,

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person . . . . and the safety of the community.

RELEASE ORDER
CR 11-70453 MAG (LB)                2

*Id.* § 3142(e)(3). The presumption shifts a burden of production to a defendant, but the burden of persuasion remains with the government. *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). The government must establish the risk of non-appearance by a preponderance of the evidence, *see United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985), and it must establish danger to the community by clear and convincing evidence, *see* 18 U.S.C. § 3142(f)(2)(B).

## II.  RELEASE ORDER

Following a hearing under 18 U.S.C. § 3142(f), and considering the factors set forth in section 3142(g), the Court finds that a combination of conditions in section 3142(c) will reasonably assure the defendant's appearance in this case and the safety of any other person or the community. In particular, the Court considered the following facts and 3142(g) factors.

### A.  The Nature and Circumstances Of the Offense

The serious narcotics offenses here involve methamphetamine. While Mr. Esver's conduct as a buyer (and presumably re-seller) is less culpable than the supplier, still, it is a serious offense. The court observes that other buyers generally have been released on the case on conditions (generally involving residential treatment because addiction has been a problem for those defendants charged in other complaints related to the same wiretap).

### B.  The Weight of the Evidence

While the weight of the evidence is the least important factor, *see, e.g., United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991), it is relevant to the court's assessment of danger to the community and the risk of the defendant's non-appearance in court. Given the substantial penalties faced by the defendant, the case – as revealed by the presumption and the strength of wiretap evidence with actual intercepted phone calls – tends to show flight risk and reveals the danger to the community of the defendant's conduct.

### C.  The Defendant's History and Characteristics

Turning first to his criminal history, the defendant, who is 43, has misdemeanor convictions in 2001 for drug possession and an annoying phone call.

Other defendants have had substance abuse and mental health issues. The court had a serious

RELEASE ORDER
CR 11-70453 MAG (LB)                    3

1  conversation with Mr. Esver and his attorney, Scott Sugarman, about the difficulties about
2  addiction and the appropriateness of residential treatment for issues with methamphetamine (and
3  essentially the difficulties of compliance with supervision terms).  Based on Mr. Sugarman's
4  conversations with his client, he represented that the conditions that the court set were sufficient,
5  and the court accepts those representations.  (Mr. Sugarman has a demonstrated track record of
6  forthrightly addressing issues like this in cases like that, and so the court gives weight to his
7  assessment.)

8      Mr. Esver has strong ties to the community, all reflected in the bail study.  He was born and
9  raised in Richmond, he lives still in San Pablo, and in the normal course of life, he has regular
10 contact with his parents and his famiily.  Indeed, all members of his family reside at a home
11 owned by his parents. He has seven siblings who live in the Bay Area.  The problem is that
12 following execution of the search warrant, his family is currently not speaking with him.
13 Similarly-situated defendants were released, but all had family members standing up with them.
14 Mr. Esver did not have that, and so at the initial bail hearing, the court did not order his release,
15 instructing Mr. Sugarman that someone had to stand up with Mr. Esver.  At this last hearing, his
16 friend from high-school appeared in court and signed on the release form.

17     D.  <u>Conclusion and 3142(c) Conditions</u>

18     Here, the defendant produced evidence to rebut the presumption that no conditions of release
19 would reasonably assure his presence or community safety.  Under *Hir*, the burden of persuasion
20 remains with the government.  *See* 517 F.3d at 1086.  The court's inquiry is not whether the
21 defendant is guilty of the offenses, which why the weight of the evidence is the least important
22 factor in the court's bail inquiry.  *See Gebro*, 948 F.2d at 1121.  Instead, even in the context of a
23 section 3142(f) hearing, the court's inquiry remains whether – considering the factors in section
24 3142(g) – any conditions in section 3142(c) will reasonably assure the defendant's appearance
25 and the safety of the community.  The court finds that the conditions in the attached bond form
26 reasonably assure the defendant's appearance and community safety.

27     The court elaborates a bit more on release.   This defendant is the kind of person who
28 ordinarily bails out on a bond co-signed by family members.  The search here – according to Mr.

RELEASE ORDER
CR 11-70453 MAG (LB)                    4

Sugarman and unchallenged by the government at the first hearing – is that the search was carried out by local law enforcement and was very upsetting to family members. That context is important to the court only to explain why family members are so angry. It makes sense: Mr. Esver risked their peace and disrupted their lives, and they are angry. As a result, he was left entirely alone. The problem is that left a defendant who ordinarily would get out with no recourse. That is why the court told Mr. Esver that someone needed to stand up for him and risk their financial future to ensure compliance with the conditions of release.

That was his friend from high school, a full-time mother with a seven-year-old daughter who works part-time as a hairstylist making a relatively modest $1,000 a month. Given her finanical situation, the court had her co-sign on the bond in the amount of $25,000 (and the full bond amount as to Mr. Esver is $50,000).

The court appreciates that to some, that amount is modest. To the co-signer, it represents a sufficient financial hardship. It is enough to be a meaningful risk.

There is another issue about co-signing on the bond. The government did not argue this in this case, but in case it does on appeal, the court offers this additional context and explanation. The bond is not a surety bond but is a co-signed bond. In other cases, the government has argued that the court could not impose this condition without requiring the sureties to demonstrate by affidavit that they had sufficient assets to cover the bond amount. *See* 18 U.S.C. § 3142(c)(1)(B)(xii) (permitting a defendant to be released on a bail bond with solvent sureties); Fed. R. Crim. P. 46(e) (requiring sureties to sign an affidavit that they have adequate assets). The court rejected that argument in other cases and rejects it here. It did not appoint the co-signors as sureties because they do not have sufficient solvent assets now to make good on a bond amount now. Instead, based on their income and the court's assessment of their ability to pay a bond amount over time, the court imposed the condition that they co-sign on the bond. The court imposed that condition under 3142(c)(1)(B)(xiv)'s catch-all position, which allows the court to impose "any other condition that is reasonably necessary" to assure a defendant's appearance and community safety.

To explain this approach in more detail, it is true that a court *may* release a defendant on a

RELEASE ORDER
CR 11-70453 MAG (LB)                    5

1  bond co-signed by solvent sureties.  But that is only one of many conditions that a court *may*
2  impose.  Indeed, before imposing any conditions of release, the bail statute first requires release
3  on a personal recognizance bond or an unsecured appearance bond unless such release would not
4  reasonably assure the person's appearance or the safety of the community.  18 U.S.C. § 3142((b).
5  Then, the bail statute requires the following:

> If the judicial officer determines that the release . . . [on a personal recognizance or unsecured appearance bond]  will not reasonably assure the appearance of the person as required. or the safety of any other person or the community, such judicial order shall order the pretrial release of the person –
>
> (A) subject to the condition that a person not commit a Federal, state, or local crime during the period of release . . .; and
>
> (B) subject to the *least restrictive further condition, or combination of conditions,* that the judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person or the community, which may include the condition that the person —
>
> [then lists fourteen possible conditions of release that a court may impose].

*See* 18 U.S.C. § 3142(c)(1)(A) and (B)(i-xiv). The fourteen possible conditions are as follows:

> (i) a custodian; (ii) employment; (iii) attending school; (iv) travel restrictions; (v) no contact with victims; (vi) reporting to pretrial services; (vii) a curfew; (viii) no firearms; (ix) no excessive use of alcohol and no controlled substance without a prescription; (x) medical, psychological or psychiatric treatment (including substance abuse treatment); (xi) execution of an agreement to forfeit solvent assets upon a failure to appear; (xii) executing a bail bond with solvent sureties; (xiii) intermittent custody (with release for work, school, and other limited purposes; and (xiv) "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community."

Thus, 3142(c)(1)(B) requires the court to release a defendant under the least restrictive conditions that will reasonably assure the defendant's appearance and community safety, "which may include" the fourteen conditions listed above.  That list is not exhaustive or exclusive.  More to the point here, nothing in section 3142(c)(1)(B) *requires* the court to have a bond with solvent sureties.

The bail statute's approach is that when, as here, an unsecured bond alone is not sufficient, the court may impose additional conditions that are "the least restrictive further conditions" that will reasonably assure the defendant's appearance and the safety of the community.  Those conditions *may* include the conditions specified in section 3142(c)(1)(B)(i-xiii) (including a

RELEASE ORDER
CR 11-70453 MAG (LB)                       6

solvent surety) or "any other condition that is reasonably necessary to assure" the defendant's appearance or the community's safety. *See id.* § 3142(c)(1)(B)(xiv). The conditions that the court imposes here include a $50,000 unsecured personal recognizance co-signed by Mr. Esver's friend in the amount of $25,000

As part of the co-signing process, the court did not require a Rule 46(e) affidavit establishing assets of up to $25,000 because the court's questioning of the co-signer revealed that she does not have those assets. Instead, the court had her sign under section 3142(c)(1)(B)(iv)'s catch-all provision. The court addressed the co-signer's income, employment, assets, and criminal history directly in open court, and had them affirm their basic information on a form provided to the government to ensure that any factors that might render the co-signore inappropriate (like criminal history) are identified. The court instructed the co-signor, and the defendant, about the consequences of signing on the bond: if the defendant violates any of the conditions of his release, the court will declare the bond forfeit, and the government may come after the defendant and the co-signor for up to the full amount of the bond. The court explained that the bond amount was like a mortgage in that the co-signer would be liable to pay up to $25,000 if the defendant violates any terms of his release. The court emphasized to the co-signer the real and long-standing financial harm that the co-signer would suffer if the defendant violated the terms of his release. The court also emphasized to the defendant how the co-signer was staking their financial future on his compliance with the terms of his release. It is the defendant's recognition of that risk – together with the other conditions of release – that reasonably assures the court of the defendant's appearance and the safety of the community. *See* 18 U.S.C. § 3142(c).   And here, Mr. Esver was visibly shaken, and cried during these advisements.   The co-signer's affection for her high-school friend was also apparent.

Three other points about this process should be stressed.

First, the government's position – taken to its logical conclusion – is that defendants with some risk of non-appearance or danger to the community that can be mitigated with a co-signed appearance bond can never be released unless they can identify someone in their lives with significant and identifiable assets. Put another way, under the government's approach,

RELEASE ORDER
CR 11-70453 MAG (LB)                 7

defendants without access to material wealth (either their own or through friends and family) will not have a meaningful shot at pretrial release.  That runs counter to the Bail Reform Act's mandate that a "judicial officer may not impose a financial condition that results in the pretrial detention of the person."  18 U.S.C. § 3142(c)(2).  The Advisory Committee Notes to Rule 46 reflect a similar policy to eliminate financial barriers to a poor defendant's ability to be released on bail:

> The amendments are designed to make possible (and to encourage) the release on bail of a greater percentage of indigent defendants than are now released.  To the extent that other considerations make it reasonably likely that the defendant will appear, it is both good practice and good economics to release him on bail even though he cannot arrange for cash or bonds even in small amounts.  In fact it has been suggested that it may be a denial of constitutional rights to hold indigent prisoners in custody for no other reason than their inability to raise money for a bond.  *Bandy v. United States*, 81 S. Ct. 198 (1960).

Advisory Committee Notes to 1966 Amendment to Fed. R. Crim. P. 46.

Second, the court observes that Rule 46(e) does require that a surety be qualified.  That means the surety must demonstrate by affidavit that its assets are adequate.  Fed. R. Crim. P. 46(e); *see also* 18 U.S.C. § 3142(c)(1)(B)(xii) (if solvent sureties execute a bond, they must provide the court with information about the value of the assets and liabilities; such surety shall have a net worth with sufficient unencumbered value to pay the amount of the bail bond).  The court does not read Rule 46(e) to be inconsistent with the Bail Reform.  A reasonable reading is that Rule 46(e) applies to solvent sureties who execute a bail bond under 18 U.S.C. § 3142(c)(1)(B)(xii).  And again, this reading comports with the policy of eliminating barriers to the release of indigent defendants on bail.  *See* 18 U.S.C. § 3142(c)(2); Advisory Committee Notes to 1966 Amendment to Fed. R. Crim. P. 46.  It also is consistent with the requirement that the court impose the least-restrictive conditions to reasonably assure the defendant's appearance and the community's safety.  *See id.* § 3142(c).

Third, the approach that the court employs here is the well-established practice of this district's magistrate judges and many magistrate judges across the country.  *See, e.g., United States v. Thomas*, 615 F. Supp. 2d 1083, 1085-86 (N.D. Cal. Apr. 29, 2009) (rejecting government's Rule 46(e) argument, noting significance of co-signers' promises to pay a significant amount of money over time, and noting that other federal courts throughout the

1 country routinely apply this approach); *United States v. Powell*, No. CR 10-00292 CW (DMR), ECF Nos. 18 (release order rejecting Rule 46(e) argument) and 41 (Judge Wilken affirmed release order); *United States v. Cruz*, No. CR. 09-01157 DLJ (LB), ECF Nos. 24 (release order rejecting Rule 46(e) argument) and 30 (Judge Jensen affirmed release order).

## V.  CONCLUSION

The Court orders the defendant released pursuant to the conditions in the attached "Order Setting Conditions of Release and Appearance Bond."

At the government's request (to allow it to consider whether to appeal), the court stays its release order until Friday, April 29, 2011 at 5 p.m.

IT IS SO ORDERED.

DATED: April 28, 2011

LAUREL BEELER
United States Magistrate Judge